No. 2023-2266

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., PIRELLI TYRE LLC,
Plaintiffs-Appellants,

SHANDONG NEW CONTINENT TIRE CO., LTD.,
Plaintiffs.

v.

UNITED STATES, THE UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,
Defendants-Appellees.

---

Appeal from the United States Court of International Trade in
Case No. 20-00115, Judge Jennifer Choe-Groves

---

RESPONSE BRIEF FOR DEFENDANT-APPELLEE UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

Of Counsel:                              SOSUN BAE
                                         Senior Trial Counsel
AYAT MUJAIS                              U.S. Department of Justice
Senior Attorney                          Civil Division
U.S. Department of Commerce              Commercial Litigation Branch
Office of the Chief Counsel for Trade    P.O. Box 480
   Enforcement and Compliance            Ben Franklin Station
1401 Constitution Avenue, NW             Washington, D.C. 20044
Washington, D.C. 20230                   Tel: (202) 305-7568
                                         Email:  Sosun.Bae@usdoj.gov

January 5, 2024                          Attorneys for Defendant-Appellee

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rule 47.5, defendant-appellee's counsel states that she is unaware of any other appeal in or from these actions that previously was before this Court or any other appellate court under the same or similar title.  Defendant-appellee's counsel is also unaware of any case pending in this or any other court that may directly affect or be affected by the Court's decision in this appeal.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES ...........................................................1

STATEMENT OF THE CASE ..............................................................1

    I.    Nature Of The Case ...............................................................1

    II.    Legal Framework For Antidumping Duty Proceedings ......................2

        A.    Commerce's Issuance Of Antidumping Duty Orders ...............2

        B.    Statutory And Regulatory Scheme For Conducting Administrative Reviews .............................................3

        C.    Presumption of Government Control In Non-Market Economy Countries ..............................................4

    II.    Statement Of Facts And Course Of Proceedings Below ......................7

        A.    Commerce's Administrative Proceedings ..................7

        B.    Trial Court Proceedings .........................................10

SUMMARY OF THE ARGUMENT ...................................................13

ARGUMENT ...............................................................................15

    I.    Standard Of Review .......................................................15

    II.    Commerce's Determination That Pirelli Had Failed To Rebut The Presumption Of *De Facto* Government Control Is Lawful................ 16

        A.    Commerce's Method of Analyzing Pirelli Tyre's Separate Rate Eligibility Was In Accordance with Law .................16

1.    Commerce's Analysis Accords With Its Stated Practice ....................................................................... 16

2.    Commerce Was Not Required To Discuss Export Activities Or Functions In Assessing The Third *De Facto* Factor ...........................................................................19

B.    Pirelli Confuses The Applicable Standards For A Separate Rate Analysis................................................................... 24

III.    Substantial Evidence Supports Commerce's Determination .............. 28

A.    As The Trial Court Acknowledged, Commerce Relied On Multiple Pieces Of Record Evidence In Determining That Pirelli Had Not Sufficiently Rebutted The Presumption Of Government Control ............................................... 28

B.    This Court Need Not Consider Italian Law, But Even If It Does, Italian Law Does Not Support Pirelli's Claims .......................32

CONCLUSION ................................................................... 36

**CASES**                                                                    **PAGE(S)**

*Ad Hoc Shrimp Trade Action Committee v. United States*,
    802 F.3d 1339 (Fed. Cir. 2015) ............................................................ 15, 16

*Advanced Tech & Materials Co., Ltd. v. United States*,
    885 F. Supp. 2d 1343 (Ct. Int'l Trade 2012) ......................................... 30, 31

*AMS Assocs. v. United States*,
    719 F.3d 1367 (Fed. Cir. 2013) .......................................................................6

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    203 F. Supp. 3d 1256 (Ct. Int'l Trade 2017).................................................23

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    284 F. Supp. 3d 1350 (Ct. Int'l Trade 2018) ..................................... 7, 23, 24

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ....................................................................16

*Can Tho Imp.-Exp. Joint Stock Co. v. United States*,
    435 F. Supp. 3d 1300 (Ct. Int'l Trade 2020)...................................................7

*Changzhou Hawd Flooring Co. v. United States*,
    848 F.3d 1006 (Fed. Cir. 2017) ....................................................................25

*China Manufacturers Alliance, LLC v. United States*,
    1 F.4th 1028 (Fed. Cir. 2021) .......................................................................25

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)...................................................................................20

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938).......................................................................................15

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)................................................................................ 15, 27

*Diamond Sawblades Mfrs. Coal. v. United States*,
    866 F.3d 1304 (Fed. Cir. 2017) ............................................................... 4, 25

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*,
    28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014)............................................ 21, 22

*Jiangsu Jiasheng Photovoltaic Tech Co. v. United States,*
    121 F. Supp. 3d 1263 (Ct. Int'l Trade 2015)....................................23

*Nippon Steel Corp. v. United States,,*
    458 F.3d 1345 (Fed. Cir. 2006) .....................................................15

*Nippon Steel v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) .....................................................15

*Pirelli Tyre Co., Ltd. v. United States*,
    627 F. Supp. 3d 1322 (Ct. Int'l Trade 2023) ....................................2

*Pirelli Tyre Co., Ltd. v. United States*,
    638 F. Supp. 3d 1361 (Ct. Int'l Trade 2021) ....................................2

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) .......................................................32

*Sigma Corp. v. United States,*
    117 F.3d 1401 (Fed. Cir. 1997) ........................................ 4, 5, 6, 26

*SKF USA, Inc. v. United States*,
    537 F.3d 1373 (Fed. Cir. 2008) .....................................................26

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
    298 F.3d 1330 (Fed. Cir. 2002) .............................................. 32, 33

*Tehnoimportexport v. United States*,
    766 F. Supp. 1169 (Ct. Int'l Trade 1991) ................................. 26, 27

*Transcom, Inc. v. United States*,
    294 F.3d 1371 (Fed. Cir. 2002) .......................................................5

*Union Steel v. United States*,
    713 F.3d 1101 (Fed. Cir. 2013) .....................................................15

*Yantai CMC Bearing Co. v. United States*,
   203 F. Supp. 3d 1317 (Ct. Int'l Trade 2017) ................................ 6, 16, 27, 32

*Zhejiang Mach. Imp. v. United States*,
   65 F.4th 1364 (Fed. Cir. 2023) ......................................................... 6, 19, 22

*Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*,
   350 F. Supp. 3d 1308 (Ct. Int'l Trade 2018) ........................................... 7, 17

## **STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................. 15, 25

19 U.S.C. § 1673 ........................................................................................ 2

19 U.S.C. § 1673d(a)(1) ............................................................................. 3

19 U.S.C. § 1673d(b)(1) ............................................................................. 3

19 U.S.C. § 1673d(c)(2) ............................................................................. 3

19 U.S.C. § 1675 ........................................................................................ 4

19 U.S.C. § 1675(a)(2)(A) .......................................................................... 2

19 U.S.C. § 1677b(a) .................................................................................. 2

19 U.S.C. § 1677b(b) .................................................................................. 2

19 U.S.C. § 1677(C) ................................................................................... 2

19 U.S.C. § 1677f-1(c)(2)(B) ..................................................................... 4

## **REGULATIONS**

19 C.F.R. § 351.204(d) .............................................................................. 3

19 C.F.R. § 351.205(a) ............................................................................... 3

19 C.F.R. § 351.207 .................................................................................... 3

19 C.F.R. § 351.210(a)............................................................................ 3

19 C.F.R. § 351.213 ............................................................................3

## **OTHER AUTHORITIES**

*Sparklers from the People's Republic of China,*
     56 Fed. Reg. 20,588 (Dep't of Commerce May 6, 1991)............................5, 6

*Silicon Carbide from the People's Republic of China,*
     59 Fed. Reg. 22,585 (Dep't of Commerce May 2, 1994)..........................5, 6

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China,*
     80 Fed. Reg. 34,893 (Dep't of Commerce June 18, 2015)............................8

*Certain Steel Wheels from the People's Republic of China,*
     83 Fed. Reg. 54,568 (Dep't of Commerce Oct. 30, 2018). ...........................17

*Certain Passenger Vehicles and Light Truck Tires from the People's Republic of China,*
     85 Fed. Reg. 22,396 (Dep't of Commerce Apr. 22, 2020).............................1

## STATEMENT OF THE ISSUES

1.     Whether the trial court correctly held that Commerce's finding that plaintiffs-appellants had not rebutted the presumption of *de facto* government control was in accordance with law.

2.     Whether the trial court correctly held that Commerce's determination was supported by substantial evidence, and that Commerce had acted within its discretion in not interpreting the Italian law provisions that plaintiffs-appellants had failed to put on the record.

## STATEMENT OF THE CASE

I.     Nature Of The Case

This appeal concerns the final results of the third administrative review of the antidumping duty order covering certain passenger vehicles and light truck tires from the People's Republic of China.  *See Certain Passenger Vehicles and Light Truck Tires from the People's Republic of China*, 85 Fed. Reg. 22,396 (Dep't of Commerce Apr. 22, 2020) (final results), and accompanying Issues and Decision Memorandum (IDM).  Appx0136-0174.  Plaintiffs-appellants Pirelli Tyre Co., Ltd. (Pirelli China), Pirelli Tyre S.p.A., and Pirelli Tire LLC (collectively, Pirelli) appeal the final judgment of the United States Court of International Trade (trial

court) in *Pirelli Tyre Co., Ltd. v. United States*, 638 F. Supp. 3d 1361 (Ct. Int'l

Trade 2021).[1] Appx0002-0054.

## II. Legal Framework For Antidumping Duty Proceedings

### A. Commerce's Issuance Of Antidumping Duty Orders

The Tariff Act of 1930, as amended, establishes a remedial regime to

combat unfair trade practices. If Commerce "determines that a class or kind of

foreign merchandise is being, or is likely to be, sold in the United States at less

than fair value," it will impose an antidumping duty on the merchandise in the

amount that "the normal value exceeds the export price." 19 U.S.C. § 1673. Thus,

in an antidumping proceeding, Commerce determines whether subject merchandise

is being, or is likely to be, sold at less than fair value in the United States by

comparing the export price (the price of the goods sold in the United States) and

the "normal value" of the merchandise. *See* 19 U.S.C. §§ 1673, 1675(a)(2)(A),

(C), 1677b(a).

To ensure that normal value is an appropriate benchmark against which to

measure whether sales in the United States are dumped, Commerce tests the

normal value sales to determine if they are made below cost. *See* 19 U.S.C.

§ 1677b(b). Commerce calculates a respondent-specific per unit cost of production

---

[1] The trial court issued this amended opinion and order in response to Pirelli's motion to alter or amend the judgment, superseding its original opinion in *Pirelli Tyre Co., Ltd. v. United States*, 627 F. Supp. 3d 1322 (Ct. Int'l Trade 2023).

of the merchandise and compares it to the normal value sales to ensure they are made above cost.  Using the normal value sales that are made above cost, if Commerce finds that a foreign producer or importer is selling its goods for less than these normal value sales, it makes an affirmative determination of dumping.

If Commerce makes a final determination that "the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value," and if the International Trade Commission makes a final determination that a United States industry has suffered injury or is threatened with material injury, Commerce issues an antidumping duty order.  19 U.S.C. § 1673d(a)(1), (b)(1), (c)(2); *see also* 19 C.F.R. § 351.207; 19 C.F.R. §§ 351.205(a), 351.210(a).  Such an order makes the merchandise subject to a duty in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price).

B.    Statutory And Regulatory Scheme For Conducting Administrative Reviews

Respondents and petitioners[2] may request an annual administrative review of entries in which Commerce again determines the United States price and normal value for respondents subject to the review.  This enables respondents and

---

[2]  Commerce refers to foreign producers or exporters in an antidumping proceeding as "respondents," and domestic manufacturers of the domestic like product who file petitions for relief as "petitioners."  *See*, *e.g.*, 19 C.F.R. § 351.204(d); 19 C.F.R. § 351.213.

petitioners to have the dumping margins and assessment rates updated to reflect the trading activity during the review period.  *See* 19 U.S.C. § 1675.  The administrative review statute establishes deadlines for Commerce to issue preliminary and final results of its review.  *Id.*

Commerce has broad authority to limit the number of respondents in an administrative review where it is not practicable to examine all known producers and/or exporters of the subject merchandise.  Commerce's most common practice is to limit examined respondents by selecting the exporters and producers accounting for the largest volume.  *See* 19 U.S.C. § 1677f-1(c)(2)(B).  These individually examined companies are commonly referred to as mandatory respondents.

C.    Presumption of Government Control In Non-Market Economy Countries

In proceedings involving non-market economy countries, such as China, Commerce maintains a rebuttable presumption that all companies within that country are subject to government control and should thus be assessed a single antidumping duty rate.  *See Diamond Sawblades Mfrs. Coal. v. United States,* 866 F.3d 1304, 1311 (Fed. Cir. 2017) ("Since our decision in *Sigma Corp.*, we consistently have sustained Commerce's application of a rebuttable presumption of government control to exporters and producers in {non-market economy} countries, such as {China}."); *see also Sigma Corp. v. United States,* 117 F.3d

4

1401, 1404-06 (Fed. Cir. 1997). Under this presumption, exporters of the merchandise subject to review receive this non-market economy countrywide rate unless they affirmatively demonstrate the absence of both *de jure* and *de factor* government control with respect to their export activities. *See Sigma Corp.*, 117 F.3d at 1401. The burden of rebutting the presumption of government control lies solely with the exporter. *Id.* at 1405-06. If exporters provide sufficient evidence to rebut the presumption of government control, Commerce assigns them a separate rate calculated based on its review of the mandatory respondents. *See id.* at 1405; *see also Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002).

In determining whether a company is independent from government control and eligible for a separate rate, Commerce applies a test first established in a proceeding concerning sparklers from China and further developed in a proceeding concerning silicon carbide from China. *See Sparklers from the People's Republic of China,* 56 Fed. Reg. 20,588 (Dep't of Commerce May 6, 1991) (final results) (*Sparklers*); *Silicon Carbide from the People's Republic of China,* 59 Fed. Reg. 22,585 (Dep't of Commerce May 2, 1994) (final results) (*Silicon Carbide*).

In assessing *de jure* government control, Commerce considers three factors: (1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any other formal measures by the government decentralizing

control of companies.  *See Sparklers*, 56 Fed. Reg. at 20,588; *see also Sigma Corp.*, 117 F. 3d at 1405; *AMS Assocs. v. United States,* 719 F.3d 1367, 1379 (Fed. Cir. 2013).

Separately, Commerce considers four factors in determining whether a company is free from *de facto* government control: (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses.  *See Silicon Carbide*, 59 Fed. Reg. at 22,585; *see also Zhejiang Mach. Imp. v. United States,* 65 F.4th 1364, 1366 (Fed. Cir. 2023); *Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations Involving Non-Market Economy Countries* at 2 (Dep't of Commerce Apr. 5, 2005) (Policy Bulletin 05.1).  Companies must satisfy all four factors of the *de facto* test in order to rebut the presumption of government control; therefore, Commerce need only determine that a company failed to rebut the presumption with regard to one factor in order to deny the company a separate, non-countrywide rate.  *See Yantai CMC Bearing Co. v. United States*, 203 F. Supp. 3d

1317, 1325–26 (Ct. Int'l Trade 2017); *Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*, 350 F. Supp. 3d 1308, 1321 (Ct. Int'l Trade 2018).

When the non-market economy country government has majority ownership over a company, Commerce considers the government to have control over that company, regardless of whether such control is actually exercised. *See Can Tho Imp.-Exp. Joint Stock Co. v. United States*, 435 F. Supp. 3d 1300, 1305–06 (Ct. Int'l Trade 2020); *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 284 F. Supp. 3d 1350, 1359 (Ct. Int'l Trade 2018). When the government has *minority* ownership of a respondent company, Commerce does not automatically assume control over that company. *See Zhejiang Quzhou Lianzhou Refrigerants Co.*, 350 F. Supp. 3d at 1318; *An Giang Fisheries,* 284 F. Supp. 3d at 1359. Rather, "Commerce has required additional indicia of control prior to concluding that a respondent company could not rebut the presumption of de facto government control where the government owns, either directly or indirectly, only a minority of shares in the respondent company." *An Giang Fisheries,* 284 F. Supp. 3d at 1359.

## II.    Statement Of Facts And Course Of Proceedings Below

### A.    Commerce's Administrative Proceedings

In 2015, Commerce issued an antidumping duty order covering certain passenger vehicle and light truck tires from China. *See Certain Passenger Vehicle*

*and Light Truck Tires from the People's Republic of China*, 80 Fed. Reg. 34,893

(Dep't of Commerce June 18, 2015). On October 4, 2018, Commerce initiated an

administrative review of the order, which covered 42 companies, including Pirelli

China, a separate rate applicant. Appx1546-1556. Pirelli China is located in China

and is the producer and exporter of the subject merchandise. Pirelli Tyre S.p.A,

located in Italy, is the indirect owner of Pirelli China and is 100 percent owned by

Pirelli & C. S.p.A (Pirelli Italy). Appx0150. All three Pirelli entities share

common board membership and management. Appx0150. Pursuant to the

instructions in the initiation notice, Pirelli China submitted a separate rate

application to Commerce, including information allegedly demonstrating its

freedom from *de jure* and *de facto* government control. Appx0201-0242.

On October 18, 2019, Commerce published its preliminary results.

Appx1557-1567, Appx1570-1601. Commerce preliminarily determined not to

grant Pirelli China a separate rate because it had failed to demonstrate an absence

of *de facto* and *de jure* government control. Appx1582, Appx1603-1604.

Accordingly, Commerce treated Pirelli China as part of the China-wide entity and

subject to a dumping rate of 87.99 percent. Appx1582. Subsequent to the

preliminary results, Pirelli China submitted a case brief requesting that Commerce

reverse its preliminary denial of its separate rate status. Appx1605, Appx1609.

Petitioners The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy,

8

Allied Industrial and Service Workers International Union, AFL-CIO, CLC

(collectively USW) submitted a rebuttal brief urging Commerce not to depart from

its finding in the preliminary results.  Appx1665, Appx1678-1683.

On April 15, 2020, Commerce published its final results.  Appx0136-0173.

In the final results, Commerce continued to find Pirelli China ineligible for a

separate rate because it had not rebutted the presumption of *de facto* government

control.  Appx0148.  Specifically, Commerce continued to determine Pirelli China

ineligible for a separate rate based on the *de facto* criterion concerning whether the

respondent has autonomy from the government in making decisions regarding the

selection of management.  Appx0149.  Commerce found that control over Pirelli

China's selection of management existed through the State-Owned Assets

Supervision and Administration Commission of the State Council (SASAC or

state-owned) entity China National Tire & Rubber Corporation, Ltd. (CNRC),

which is owned by Chinese state-owned entity China Chem.  Appx0149,

Appx1687.

Commerce explained that Pirelli China was 36.9 percent owned by China

Chem and the Silk Road Fund, both SASACs, *i.e.* state-owned entities.  Appx0149.

Because Pirelli China was minority-owned by state-owned entities, Commerce did

not automatically determine the presence or absence of governmental control;

rather, it considered whether the record contained additional indicia of control

9

sufficient to demonstrate that the company lacked independence and should not receive a separate rate. Appx0150. Commerce determined that the record showed that Pirelli Italy was indirectly the majority shareholder of Pirelli China, and that CNRC—a state-owned entity—chose the majority of Pirelli Italy's board members. *Id.* Commerce also found that the Pirelli entities share common board membership and management, with Ren Jianxin as both the chairman and president of state-owned entity China Chem and the chairman of Pirelli Italy, which is indirectly the majority shareholder of Pirelli China. *Id.*; *see also* Final SRA Memo at 2 (C.R. 160); Prelim. SRA Memo at 2 (C.R. 143).

B.    Trial Court Proceedings

Pirelli appealed Commerce's final results to the Court of International Trade. On June 9, 2023, the trial court issued an opinion and order sustaining the final determination in all respects.[3] Appx0001-0052. As relevant to this appeal, the trial court held that Pirelli had failed to rebut the presumption of *de facto* control, and that Commerce's determination was lawful and supported by substantial evidence. Appx0020-0043.

The trial court began its analysis by noting that this Court has sanctioned Commerce's application of the rebuttal presumption of government control for nonmarket economies, including the conjunctive four-factor *de facto* test.

---

[3] We refer here to the amended opinion and order.

10

Appx0026.  The court then rejected Pirelli's contention that Commerce's analysis was unlawful, holding that Commerce had applied the correct burden of proof in considering the potential for government control, due to minority government ownership, along with additional indicia to determine that Pirelli Tyre did not rebut the presumption of *de facto* control.  Appx0028-0030, Appx0033-0034.  The trial court highlighted Commerce's examination of indicia such as the Chinese government's significant minority ownership, the composition of Pirelli's board of directors, common board members between Pirelli entities and government-controlled entities, statements in Pirelli's 2017 annual report, the authority of Pirelli Italy's chief executive officer (CEO) Marco Tronchetti Provera, and the transfer and disposal of proprietary knowhow; the court held that such analysis was in accordance with law and supported by substantial evidence.  Appx0034, Appx0038-0043.

The trial court next addressed, and rejected, Pirelli's argument that Commerce was required to explicitly discuss export activities or functions in analyzing the third factor of the *de facto* test—whether a respondent has autonomy in making decisions regarding the selection of its management.  Appx0034-0036.  The court explained that, unlike the first and fourth factors, the language of the third factor does not mention export activities or functions at all, and that Pirelli cited no authority supporting a requirement that Commerce connect an exporter's

11

autonomy in selecting management (*i.e.*, the third factor) with specific export activities or functions. Appx0036. The court thus correctly declined to read in an additional requirement for Commerce to assess whether a respondent has autonomy from government control in its export activities or functions. Appx0037.

The court then discussed in more depth why Commerce's determination was supported by substantial evidence, holding that Pirelli's organizational structure, the 36.9 percent Chinese government ownership, the composition of and appointment power for Pirelli's board of directors, common board members between the Pirelli entities, statements in the 2017 annual report, and the requirement that Pirelli Italy's CEO reported to and derived his authority from the board of directors, together constituted substantial evidence supporting Commerce's determination that Pirelli had not rebutted the presumption of *de facto* government control. Appx0039-0043.

Addressing Pirelli's contention that certain provisions of Italian law supported its arguments, and that Commerce unlawfully refused to consider the Italian code, the court agreed that, because Pirelli had not placed the relevant Italian law on the record, Commerce had reasonably declined to reject Pirelli's interpretations of that law. Appx0037-0038. The court also explained that U.S. Court of International Trade Rule 44.1 did not constitute a back door for parties to

supplement the record that existed before the agency, and held that, in any event, Italian law was not dispositive of the case. Appx0044. Nonetheless, and in response to Pirelli's motion to alter or amend the judgment, the trial court analyzed the Italian law and held that, even if such law had been on the record before Commerce, it would still not have rebutted the presumption of *de facto* government control. Appx0044-0050.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court correctly held that Commerce's determination finding that Pirelli had not sufficiently rebutted the presumption of *de facto* government control based on the third factor—whether a respondent has autonomy from the government in making decisions regarding the selection of management—was both lawful and supported by substantial evidence. Pirelli's arguments to this Court do not demonstrate otherwise.

First, Pirelli argues that Commerce was required to explicitly discuss the third *de facto* criterion in the context in the context of a company's export activities and functions. But, as the trial court astutely held, Pirelli cites no meaningful authority to support its proposition and reads in a requirement that is noticeably missing from the language of that criterion.

13

Pirelli also alleges that, instead of relying on the substantial evidence standard, Commerce somehow used a much higher, and unlawful, standard in analyzing whether Pirelli had rebutted the presumption of *de facto* control. However, Pirelli's contentions run contrary to Commerce's framework assessing the rebuttal presumption of control, which this Court has sanctioned, and are completely belied by the facts of this proceeding, where Commerce indeed applied (and satisfied) the substantial evidence standard.

Finally, Pirelli asserts that Commerce's determination is unsupported by substantial evidence.  Pirelli's arguments on this point largely depend on interpreting provisions of Italian law, which Commerce properly declined to consider because Pirelli had failed to put such provisions on the record of the administrative proceeding.  As such, this Court should not consider such arguments.  Even if the Court does consider the substance of the Italian law, the trial court correctly determined that the Italian law provisions on which Pirelli relies do not sufficiently rebut the presumption of control.  Finally, as the trial court held, Commerce fully considered the record evidence and cited numerous reasons why Pirelli had failed to satisfy the third *de facto* factor.  These reasons, and the record evidence supporting them, certainly satisfy the substantial evidence standard.

# **ARGUMENT**

I.     Standard Of Review

In reviewing the trial court's judgment, this Court "reappl{ies} the statutory standard of review that the Court of International Trade applied in reviewing the administrative record." *Nippon Steel v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citation omitted.)  This Court will uphold Commerce's determination unless it is unsupported by substantial record evidence or otherwise unlawful.  *See Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  Importantly, this Court has declared that it "will not ignore the informed opinion of the {trial court}." *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (cleaned up).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may also be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  A party disputing Commerce's determination as unsupported by substantial evidence thus "has chosen a course with a high barrier to reversal," *Nippon Steel Corp.*, 458 F.3d 1345, 1352 (Fed. Cir. 2006), and the Court will sustain Commerce's

15

determinations if they are reasonable and supported by the record as a whole, even if some evidence detracts from them.  *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## II.    Commerce's Determination That Pirelli Had Failed To Rebut The Presumption Of *De Facto* Government Control Is Lawful

Pirelli first argues that Commerce acted unlawfully in conducting its *de facto* analysis; specifically, Pirelli contends that Commerce erred in conducting its separate rate eligibility analysis, and that Commerce employed a higher, unlawful standard in determining whether the presumption was rebutted rather than relying on the substantial evidence standard.  These arguments fail.

### A.    Commerce's Method of Analyzing Pirelli Tyre's Separate Rate Eligibility Was In Accordance with Law

#### 1.    Commerce's Analysis Accords With Its Stated Practice

As explained above, there are four *de facto* criteria that a company must satisfy to rebut the presumption of government control.  *See Ad Hoc Shrimp Trade Action Comm.,* 802 F.3d at 1090 n.21.  Companies must rebut the presumption with regard to all four criteria, but Commerce can lawfully determine, based on the failure to meet only one factor, that an entity is presumably under *de facto* government control.  *See Yantai CMC Bearing Co*., 203 F. Supp. 3d at 1325-26 ("Yantai CMC failed to meet the third factor of the test. Given that all four factors must be satisfied, Commerce had no further obligation to continue with the

16

analysis."). Here, Commerce lawfully determined, based on analysis of the third factor—whether a respondent has autonomy from the government in making decisions regarding the selection of management—that Pirelli had not sufficiently rebutted the presumption. Appx0149-0152. The trial court agreed. Appx0028-0038.

When a company is majority-owned by a state-controlled entity, this information alone may be sufficient to support a finding of control. *See, e.g., Zhejiang Quzhou*, 350 F. Supp. 3d at 1323. But, significantly, even if a respondent is minority-owned by a state-controlled entity, that does itself establish an absence of government control. Appx0150. Rather, when conducting a separate rate analysis for a company with minority ownership by the Chinese government, Commerce considers whether the record contains additional indicia of control sufficient to demonstrate that the company lacks independence and therefore should receive the China-wide rate. *Id*. Commerce's practice has been to examine whether the Chinese government may be able to exercise control of a company's operations through minority government ownership under certain factual scenarios. *Id.* (citing *Certain Steel Wheels from the People's Republic of China*, 83 Fed. Reg. 54,568 (Dep't of Commerce Oct. 30, 2018) (preliminary results), and accompanying PDM)).

17

Here, Commerce acted in accordance with its stated practice, finding the requisite additional indicia of control. As Commerce explained (and the trial court noted), record evidence demonstrates that Pirelli China is 36.9-percent owned by state-owned entities, and that the Chinese government, via these state-owned entities, can exercise control over Pirelli's management selection. Appx0149-0150, Appx1604, Appx1687. Specifically, Pirelli Italy is the indirect majority shareholder of Pirelli China and selects its board members; moreover, the Pirelli entities share common board membership and management including Ren Jianxin, who is the chairman of both the state-owned China Chem and Pirelli Italy, and others. Appx0150, Appx1687. In addition, China Chem appointed the majority of Pirelli Italy's board and is the single largest indirect shareholder. Appx0150, Appx0557-0558, Appx1087-1111. Indeed, China Chem is the only party to directly, or indirectly, hold more than three percent of Pirelli Italy's shares. Appx0151, 0817. That Pirelli China and Pirelli Italy are nominally separate entities,[4] and that Pirelli China is 36.9-percent government owned, do not rebut the presumption of government control when considered in conjunction with the other indicia analyzed by Commerce.

---

[4] Notwithstanding Pirelli's claims that these two companies operate independently, the record shows that Pirelli Italy indirectly owns several shares of Pirelli China. Pirelli Br. at 46; Appx0152, Appx1373-1376.

Pirelli claims that Commerce "did not specifically describe what additional indicia of control it relied on." Pirelli Br. at 33. This is simply not accurate; Commerce pointed to, and the trial court clearly understood, the additional indicia on which it had relied to determine that Pirelli had not rebutted the presumption of *de facto* government control. Appx0034, Appx0150-0152 (Commerce considered Pirelli's ownership, the composition and independence of Pirelli's board of directors, common board members between Pirelli entities and government-controlled entities, statements in Pirelli's 2017 annual report, the authority of CEO Mr. Provera, and the transfer and/or disposal of proprietary know-how, as additional indicia of control).

> 2.    Commerce Was Not Required To Discuss Export Activities Or Functions In Assessing The Third *De Facto* Factor

Pirelli alleges that Commerce erred by not specifically linking the third *de facto* criterion to the respondent's export activities or functions. *See* Pirelli Br. at 22-31. But, as the trial court correctly held, Commerce is not required to connect an exporter's autonomy in selecting management—the third factor of the *de facto* analysis—with specific export activities or export functions.

Under the third factor of the *de facto* analysis, Commerce considers "whether the respondent has autonomy from the government in making decisions regarding the selection of management." *See Zhejiang Mach. Imp. v. United States,* 65 F.4th at 1366; Policy Bulletin 05.1 (emphasis added); Appx0149. Here,

Commerce determined, based on substantial evidence, that Pirelli China did not have autonomy in making decisions regarding the selection of management.

According to Pirelli, Commerce must explicitly link management control and selection to an ability to influence export activities. *See* Pirelli Br. at 22. Pirelli primarily relies on the language in Policy Bulletin 05.1 stating that "{Commerce} considers four factors in evaluating whether each respondent is subject to *de facto* government control of its export functions." Pirelli Br. at 22. But the general consideration of whether the factors indicate that a respondent is subject to *de facto* control of its export functions does not require a specific finding that each factor be specifically discussed in the context of export activities or functions. This is made abundantly clear by the language of the four factors, given the first and fourth factors explicitly address export activities that Commerce must address in its analysis. *See* Policy Bulletin 05.1. In conspicuous contrast, and as the trial court observed, the second and third factors do not mention export activities or functions at all. Appx0036. When particular language is included in one section but omitted in another, one can presume that the disparate inclusion or exclusion is intentional. *See Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021). Requiring Commerce to specifically link the autonomy of the respondent in making management selection decisions to export activities or functions would

read in an additional requirement that does not exist and, frankly, does not comport with common sense.[5]

The trial court correctly held that Pirelli had not cited any authority supporting a requirement that Commerce connect an exporter's autonomy in selecting management with specific export activities or export functions. Appx0036. Pirelli disagrees, alleging that the Court of International Trade has established that Commerce must show a linkage between management selection and export activities. *See* Pirelli Br. at 28. This argument fails. As an initial matter, none of the cases cited by Pirelli are binding or hold more persuasive value than the trial court's decision below. More importantly, an examination of the cases cited by Pirelli only demonstrates the weakness of its position.

First, Pirelli claims that, in *Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014), the trial court sustained the granting of a separate rate based on evidence that the "selection of personnel with primary control over production and business operations . . . {was} not in any way influenced by the government," which Pirelli appears to assume means that Commerce linked that selection to export activities. Pirelli Br. at 29 (citing

---

[5] For one, if the government had a measure of control in a management selection decisions, this would inherently affect the export activities or functions of respondent *exporters*. For another, it is unclear precisely how one could always be expected to explicitly link the selection of a company's management to specific export activities or functions.

*Jiangsu Jiashen*, 28 F. Supp. 3d at 1348).  But Pirelli extrapolates from the court's opinion a requirement that the court itself did not impose.

As noted above, Pirelli confuses the overall purpose of the *de facto* analysis with the (unwritten) requirement that each step of the *de facto* analysis must involve a link to export activities.  While Commerce indeed looks to whether an exporter has demonstrated the absence of *de jure* and *de facto* government control over its export activities, the test itself focuses on controls over the decision-making process on export-related investments.  *See Zhejiang Mach. Imp. V. United States,* 65 F.4th at 1366; Policy Bulletin 05.1 at 2.  Each factor of the *de facto* analysis, then, examines a different aspect of a respondent's level of control by the government, with the third factor specifically considering decisions regarding the selection of management, and the first and fourth factors examining export activities and functions.  *Id.*

In *Jiangsu Jiasheng*, the trial court examined each of the *de facto* factors separately, and did not require that Commerce discuss export activities in the context of the third factor.  Rather, the court parsed the record evidence, holding that the respondent's shareholders were wholly state-owned companies with the power to appoint board members, and that some of the board members held positions within state-owned companies as well.  *See Jiangsu Jiasheng,* 28 F. Supp. 3d at 1348-49.  There is no connection to export activities in that holding.

Moreover, in a subsequent opinion in the same case, the trial court stated that the manager of the respondent, rather than a state-owned shareholder, was "in a position to control, and does control, the operations of {the respondent}." *Jiangsu Jiasheng Photovoltaic Tech Co. v. United States,* 121 F. Supp. 3d 1263, 1272 (Ct. Int'l Trade 2015). Again, the court did not discuss export activities in the context of this factor. Instead, it simply focused on whether the respondent had autonomy over its selection of management, as Commerce did in the underlying proceeding.

Pirelli also argues that, in *An Giang Fisheries*, the trial court sustained Commerce's denial of a separate rate based on a "showing that linked a specific individual that was beholden to a minority government shareholder to the day-to-day operations of the respondent company," and that this determination was only affirmed after Commerce linked the government shareholder to an individual with authority to impact export activities. Pirelli Br. at 30 (citing *An Giang Fisheries,* 284 F. Supp. 3d at 1362-63). Pirelli misunderstands the basis for the trial court's decision. The court had initially remanded Commerce's denial of a separate rate because Commerce had not clearly explained whether it had relied on the potential for the government to nominate a board member or whether the government indirectly nominated respondent's board members through another nominated representative of which the government had control. *An Giang Fisheries Imp. &*

23

*Exp. Joint Stock Co. v. United States*, 203 F. Supp. 3d 1256, 1290-1291 (Ct. Int'l

Trade 2017).

On remand, Commerce relied on record evidence that the government had

the ability to exercise control through the appointment of the general director, who

was beholden to the minority government shareholder, in continuing to deny a

separate rate. *See id.* at 1361. The trial court sustained the remand results,

explaining that Commerce had relied on record evidence that the respondent's

general director was beholden to the minority government shareholder, and that

this director exerted influence over the respondent's employees. *Id.* at 1363. It did

*not* sustain the denial of a separate rate because Commerce had linked the

government shareholder to an individual with authority to impact export activities.

Given the thinly supported extrapolations Pirelli makes with regard to the

trial court's opinions, this Court should disregard the claim that the courts have

consistently ruled that Commerce must give meaning to the words "export

activities" in its separate rate analysis. The trial court correctly held that Pirelli's

interpretation is unsupported by the language of the policy bulletin or other

authority; this Court should affirm.

B.    Pirelli Confuses The Applicable Standards For A Separate Rate
      Analysis

Pirelli appears to misunderstand both what the relevant standards in

conducting a separate rate analysis are *and* Commerce's application of those

standards. Namely, Pirelli wrongly interprets Commerce's "presumption" of government control as a separate, distinct, and lower standard than the normal "substantial evidence" standard. *See* Pirelli Br. at 32. Pirelli also erroneously claims that, in undertaking an analysis of the rebuttable presumption of government control, *any* proffered evidence by the respondent must cause the presumption to "vanish" and be replaced with the substantial evidence standard. *Id.* at 31-32. These misconceptions do nothing more than confuse a relatively simple issue, and the jurisprudence Pirelli cites in an attempt to support its argument do not bear on the situation at hand.

Pirelli's argument that Commerce analyzed Pirelli China's separate rate eligibility based on an unfairly high "presumption" standard rather than the substantial evidence standard required by the statute is particularly egregious. *See* Pirelli Br. at 35; 19 U.S.C. § 1516a(b)(1)(B)(i). As explained above, this Court has already sanctioned Commerce's practice in applying the rebuttable presumption of government control for nonmarket economies in its separate rate analysis. *See, e.g., China Manufacturers Alliance, LLC v. United States,* 1 F.4th 1028, 1037 (Fed. Cir. 2021); *Diamond Sawblades Mfrs. Coal*, 866 F.3d at 1311; *Changzhou Hawd Flooring Co. v. United States,* 848 F.3d 1006, 1009 (Fed. Cir. 2017). As this Court has already deemed Commerce's rebuttable presumption practice analysis to be

lawful, and Pirelli provides no reason to revisit the issue, the Court need not

consider the argument further.

Furthermore, in applying the rebuttable presumption of government control

to Pirelli, Commerce still adhered to the statutory requirement to base its findings

on substantial evidence, determining, *with multiple references to record evidence*,

that Pirelli had failed to rebut the presumption.  Commerce's actions were squarely

in line with the prevailing legal standards.  *See Sigma Corp. v. United States*, 117

F. 3d at 1405-06 (finding that rebutting the presumption of government control

requires substantial evidence).  Pirelli's assertions that Commerce failed to employ

the substantial evidence standard amount to no more than a call to reweigh the

evidence in its favor.  But, as explained above, substantial evidence is only "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir.

2008).  And Commerce is given "considerable deference in its interpretation of its

statutory authority and the methodology employed in the administration of the

antidumping law."  *Tehnoimportexport v. United States*, 766 F. Supp. 1169, 1173

(Ct. Int'l Trade 1991) (citations omitted).

Pirelli argues that it produced more than the "minimum quantum of evidence

required" to rebut the presumption of control, and therefore the presumption

should "vanish," but in doing so Pirelli misunderstands both the relevant standards

and Commerce's actions. Pirelli Br. at 34, 38. First, Pirelli's contention that it need only provide a "minimum quantum" of evidence to rebut the presumption cannot be squared with the requirement for Commerce to make its determination based on substantial evidence, particularly since Commerce's determination of substantial evidence will not be overturned merely because a party provides some evidence detracting from Commerce's conclusion. *See Tehnoimportexport*, 766 F. Supp. at 1173; *see also Consolo*, 383 U.S. at 620 (the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported). Second, Commerce is the authority that determines whether the presumption of government control has been rebutted, not the respondent. *See Yantai CMC Bearing Co.,* 203 F. Supp. 3d at 1324 ("Commerce's role in an administrative proceeding is to weigh the evidence established in the record."). Third, and importantly, Commerce *still relied on substantial record evidence* in determining that Pirelli did not demonstrate independence from the Chinese government and failed rebut the presumption of *de facto* government control.

The trial court, while not squarely addressing this argument (because Pirelli had not made this exact argument in front of it), upheld Commerce's separate rate analysis for a company with less than majority ownership, and disagreed with Pirelli's assertion that a different standard of proof should exist based on the degree of government's ownership stake in the exporter. Appx0029. The court

explained that Pirelli had the burden of rebutting the presumption of government control, and there was no indication that Commerce imposed a higher burden on Pirelli than was lawful.  Appx0034 ( concluding "that it was reasonable for Commerce to consider the potential for control together with additional indicia, and its analysis was in accordance with the law.").  The court also held Commerce's determination supported by substantial evidence.  Because Commerce's separate rate analysis accords with the law, this Court should affirm.

III.   Substantial Evidence Supports Commerce's Determination

   A.   As The Trial Court Acknowledged, Commerce Relied On Multiple Pieces Of Record Evidence In Determining That Pirelli Had Not Sufficiently Rebutted The Presumption Of Government Control

Commerce's determination that Pirelli had failed to rebut the presumption of *de facto* control, based on the third factor, was clearly supported by substantial evidence.  *See supra* at 18-19.  The trial court agreed that Commerce had relied on substantial record evidence in determining that Pirelli's structure and board membership allowed government-controlled minority owners to exert control of Pirelli China.  Appx0038-0043.  Pirelli's attempts to detract from the significant amount of evidence relied on by Commerce and the trial court should not succeed, particularly given that its arguments rest heavily on provisions of Italian law, which, as explained in more detail below, Commerce properly declined to consider and which this Court also need not consider.

28

As already explained above, record evidence demonstrates that Pirelli China is 36.9-percent owned by state-owned entities, and that the Chinese government, via these state-owned entities, can exercise control over Pirelli's management selection. Appx0149-0150, Appx1604, Appx1687. Pirelli Italy is the indirect majority shareholder of Pirelli China and selects its board members; moreover, the Pirelli entities share common board membership and management, including Ren Jianxin, who is the chairman of both the state-owned China Chem and Pirelli Italy, and others. Appx0150, Appx1687. China Chem also appointed the majority of Pirelli Italy's board and is the single largest indirect shareholder. Appx0150, Appx0557-0558, Appx1087-1111. Indeed, China Chem is only the party to directly, or indirectly, hold more than three percent of Pirelli Italy's shares. Appx0151, 0817.

The trial court agreed with Commerce's analysis, explaining that, while Commerce acknowledged that Pirelli had a 36.9 percent minority indirect ownership by government-controlled entities, Commerce appropriately reviewed record evidence regarding Pirelli's organization, ownership, and board of directors, for additional indicia of control. Appx0030. The trial court cited Commerce's "consideration and discussion of Pirelli's ownership, the composition and independence of Pirelli's Board of Directors, common board members between Pirelli entities and government-controlled entities, statements in Pirelli's 2017

Annual Report, the authority of Pirelli's CEO, Marco Tronchetti Provera, and the transfer and/or disposal of proprietary know-how." Appx0034. The court agreed with Commerce that the board of directors were majority-appointed by entities within Chinese government control, and therefore substantial evidence supported Commerce's determination. Appx0038-0043; *see also Advanced Tech & Materials Co., Ltd. v. United States*, 885 F. Supp. 2d 1343, 1358-59 (Ct. Int'l Trade 2012) ("Board members are properly presumed subject to government control, directly or indirectly.").

In addition, Mr. Provera, Pirelli Italy's CEO reports to the board of directors and derives his authority from the board, which manages Pirelli Italy. Appx0042-0043. Pirelli argues that Pirelli Italy's articles of association ensure that Mr. Provera had exclusive day-to-day management authority, and that Pirelli Italy was not under the management and coordination activities of its largest shareholders. *See* Pirelli Br. at 52, 54. But, as just stated, the record demonstrates that Pirelli Italy is managed by the board of directors, to whom Mr. Provera directly reports and from whom he has delegated authority. Appx0152, Appx0042-0043. Moreover, as Commerce explained, Mr. Provera is charged with implementing the board's business plans and budget, rather than possessing complete and exclusive authority. Appx0152.

Significantly, Pirelli's 2017 annual report states that "Pirelli {Italy} is directly controlled by Marco Polo International Italy S.p.A. . . . and is in turn therefore indirectly controlled by {China Chem}, a state-owned enterprise (SOE) governed by Chinese law . . . and which reports to the Central Government of {China}." Appx0151, Appx0041-0042. The annual report further states that Pirelli Italy is "indirectly controlled, pursuant to art. 93 {of the Italian finance code} by ChemChina via CNRC and certain of its subsidiaries." *Id.* Thus, Pirelli's own documents admit the existence of Chinese government control over Pirelli. Pirelli attempts to explain away these statements by claiming that Pirelli Italy is required to include this language regarding control due to Italian legal requirements. Pirelli Br. at 47, 49. But the allegedly relevant Italian provisions were not on the record of the proceeding; moreover, the statements in the annual report are crystal clear as to control by Chinese state-owned entities over Pirelli, regardless of the reasoning for the inclusion of the statements.

Puzzlingly, Pirelli claims that the trial court's opinion "reveals no analysis of whether the record supported Commerce's identification of additional indicia or whether Commerce's analysis of that additional indicia was reasonable." Pirelli Br. at 44-45. But the trial court discussed at length the additional indicia of control considered by Commerce, holding that Commerce's determination with regard to

31

that indicia was in accordance with law and supported by substantial evidence.
Appx0030-0043.

> B.   This Court Need Not Consider Italian Law, But Even If It Does,
>      Italian Law Does Not Support Pirelli's Claims

Pirelli's arguments before this Court rest heavily on interpreting certain
provisions of Italian law, and Pirelli alleges that Commerce erred in declining to
consider the substance of that law. *See, e.g.*, Pirelli Br. at 46-51, 60-63; Appx0150
("Article 2497 of the Italian Civil Code is not on the record of this review. . . . The
{Italian Finance Code} is not on the record of this review.  As such, we are not
convinced that the majority of Pirelli {Italy's} board are 'independent directors'"),
Appx0151 ("{The Italian Finance Code is not} on the record of this review.  As
such, we are not convinced that Pirelli {Italy} must report that it is controlled by
Chem China mainly for accounting purposes").  The trial court held that
Commerce's rejection of Pirelli's unsupported interpretations of Italian law was
reasonable, and this Court should decide similarly.

As the trial court noted, "Commerce has discretion in the manner in which it
conducts its administrative proceedings" and "{t}he respondent bears the burden of
creating the record for Commerce's review."  Appx0038 (quoting *PSC VSMPO-
Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012), and *Yantai
CMC Bearing Co.*, 203 F. Supp. 3d at 1324); *see also Ta Chen Stainless Steel
Pipe, Inc. v. United States*, 298 F.3d 1330, 1336 (Fed. Cir. 2002).

While responding to Pirelli's argument that Rule 44.1 of the Court of International Trade provides that "{i}n determining foreign law, the court may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence," the trail court explicitly, and correctly, stated that Rule 44.1 "is not a backdoor for parties to supplement the record that existed before the agency." Appx0044. And, because the Italian law relied on by Pirelli was not placed on the administrative record before Commerce, "interpretation of the provisions is not dispositive to this case." *Id*. Pirelli offers no reasoning to depart from the trial court's conclusions. This is particularly so because Commerce is the entity charged with addressing the parties' claims in the first instance, and it appropriately declined to address Pirelli's arguments on Italian law without such law being on the record. Pirelli should not be permitted to subvert the administrative process by citing Italian law provisions that were not made available to Commerce, and inviting the Court to interpret them when Commerce did not making a finding on those issues in the first place.[6]

---

[6] To the extent that Pirelli argues that interpretation of the Italian legal provisions is a matter of law that the Court can review without Commerce having first had the opportunity, Pirelli's own arguments demonstrate that the Court would need to look not only at the legal provisions but at their application, or lack thereof, to the facts of the underlying proceeding. Any issues of law would therefore be inextricably intertwined with issues of fact.

While the trial court held that Commerce reasonably declined to consider the extra-record Italian law provisions, and explained that they were not dispositive to the resolution of the case, it nonetheless examined the substance of the laws and held that interpreting the laws would not have rebutted the presumption of government control.  Appx0044-0051.  The court's sound reasoning with regard to the interpretation of the Italian law provisions should not be disturbed.

As the trial court held, Commerce's determination that Pirelli Italy was indirectly controlled by Chinese government entities was supported by substantial evidence because, as the court stated, "Pirelli's own 2017 Annual Report confirmed that Pirelli Italy was indirectly controlled by Chem China, a Chinese government-controlled entity, via China National Tire & Rubber Corporation, another Chinese government-controlled entity."  Appx0042.  While Pirelli claims that Italian law supports its claim that Pirelli Italy was not managed or controlled by Chinese state-owned entities, the trial court ultimately determined, after examining the Italian law in detail, that the evidence on the record cited by Commerce was "more persuasive than Plaintiff's argument that Italian law created a presumption that Pirelli S.p.A was not subject to control."  Appx0044-0047.

Despite Pirelli's contentions to the contrary, the trial court found that the mere fact that members of Pirelli Italy's board of directors were labeled as "independent" under Italian law was not sufficient to demonstrate an absence of

Chinese government control in light of actual record evidence indicating such control.  Appx0051.  As the court explained, "{t}he provisions of Italian law cited by Plaintiffs would not prevent a government-controlled shareholder from appointing an individual that was independent of both the shareholder and Pirelli but still behold to the interests or control of the Chinese government."  Appx0050-0051.

Finally, Pirelli alleges that Commerce ignored the significance of Pirelli Italy's listing on the Milan Stock Exchange, claiming that, as a publicly listed company, Italian law required Pirelli Italy to maintain independence from its largest shareholders and to be transparent.  Pirelli Br. at 60-62.  But, as the trial court noted, these provisions of Italian law relied upon by Pirelli do not rebut the presumption of *de facto* government control in view of the record as a whole.  Appx0047-0049.  This is particularly so because, while certain Italian laws "impose standards that promote transparency, they do not impose any type of requirement or limitation on influence by a government-controlled shareholder."  Appx0047-0048.

Because substantial evidence supports Commerce's determination, with or without the consideration of Italian law, this Court should affirm.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court affirm the judgment of the Court of International Trade.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:

AYAT MUJAIS
Senior Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
Email:  Sosun.Bae@usdoj.gov

January 5, 2024

Attorneys for Defendant-Appellee

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify under penalty of perjury that the attached brief is proportionately spaced using Microsoft Word, uses a Times New Roman typeface in 14 point font size, and, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), contains 7,752 words.

/s/ Sosun Bae
SOSUN BAE