**2023-2266**

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., PIRELLI TIRE LLC,**

*Plaintiffs-Appellants*

**SHANDONG NEW CONTINENT TIRE CO., LTD.,**

*Plaintiff*

v.

**UNITED STATES, THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,**

*Defendants-Appellees*

---

Appeal from United States Court of International Trade
Court No. 1:20-cv-00115-JCG, Judge Jennifer Choe-Groves

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., PIRELLI TIRE LLC.

---

<div style="margin-left:40%">

Daniel L. Porter
James P. Durling
James C. Beaty
Katherine R. Afzal

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

*Counsel for Pirelli Tyre Co., LTD, Pirelli Tyre S.P.A., Pirelli Tire LLC*

</div>

February 9, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 23-2266 |
| **Short Case Caption** | Pirelli Tyre Co., Ltd. v. US |
| **Filing Party/Entity** | Pirelli Tyre Co., Ltd., Pirelli Tyre S.P.A., Pirelli Tire LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 2/9/2024

Signature:  /s/Daniel L. Porter

Name:  Daniel L. Porter

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Pirelli Tyre Co., Ltd. | | |
| Pirelli Tyre S.P.A. | | |
| Pirelli Tire LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**FORM 9. Certificate of Interest**

<div align="right">

**Form 9 (p. 3)**
**March 2023**

</div>

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable      ☐   Additional pages attached

| | | |
|---|---|---|
| Daniel L. Porter | Katherine R. Afzal | |
| James P. Durling | | |
| James C. Beaty | | |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable      ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ...................................................................................................... 4

I.    COMMERCE'S APPROACH TO ANALYZING WHETHER
      PIRELLI ITALY WAS CONTROLLED BY THE CHINESE
      GOVERNMENT WAS UNLAWFUL .......................................................... 4

      A.    Contrary To Claims By Commerce and Petitioner, The
            Language and Structure of Policy Bulletin 05.1 Requires Each
            Factor to Be Linked to Export Activities ...................................... 5

      B.    Commerce Adopted an Unlawful Interpretation and Application
            of "Rebuttable Presumption" .......................................................... 8

II.   COMMERCE'S DETERMINATION THAT PIRELLI TYRE
      FAILED TO REBUT THE PRESUMPTION OF GOVERNMENT
      CONTROL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ...... 12

      A.    Commerce's Finding that Pirelli's Shareholding Structure
            Allowed Chinese Owned Companies to Control Pirelli Tyre's
            Operational Activities Is Not Supported By Substantial
            Evidence ....................................................................................... 15

      B.    Contrary To Commerce's Implicit Finding, The Majority Of
            Members Of Pirelli Italy's Board Of Directors Are Independent
            From The Chinese Shareholders ................................................... 18

      C.    Commerce's Conclusion That Chinese State-Owned
            Shareholders Exercised *De Facto* Operational Control Over
            Pirelli Italy Ignores Substantial Evidence That Pirelli Italy and
            therefore Pirelli Tyre's Day-To-Day Management Was
            Insulated From Chinese Shareholder's Control ............................. 22

III.  THE TRADE COURT CORRECTLY CONSIDERED ITALIAN
      LAW, WHICH PROPERLY UNDERSTOOD CONFIRMS THAT

AFTER PIRELLI'S RELISTING THE CHINESE SHAREHOLDERS
DID NOT HAVE *DE FACTO* CONTROL OVER PIRELLI.......................25

    A.    The Trade Court Permissibly Considered Relevant Italian Law ........26

    B.    Italian Law Supports Pirelli's Argument That The Chinese
Government Did Not Control Pirelli Tyre's Export Activities...........27

CONCLUSION AND RECOMMENDED APPELLATE REMEDY ....................33

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*,
 960 F.2d 1020 (Fed. Cir. 1992) ...............................................................9

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
 522 U.S. 359 (1998) ............................................................................13

*Atlantic Sugar, Ltd. v. United States*,
 744 F.2d 1556 (Fed. Cir. 1984) ...........................................................13

*Burlington Truck Lines, Inc. v. United States*,
 371 U.S. 156 (1962) ...................................................................... 10, 14

*Consol. Edison Co. of NY v. NLRB*,
 305 U.S. 197 (1938)...................................................................... 12, 14

*Downhole Pipe & Equip., L.P. v. United States*,
 776 F.3d 1369 (Fed. Cir. 2015) ...........................................................12

*Matsushita Elec. Indus. Co. v. United States*,
 750 F.2d 927 (Fed. Cir. 1984) .............................................................12

*Motor Vehicle Mrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ..............................................................................14

*Nippon Steel Corp. v. United States*,
 458 F.3d 1345 (Fed. Cir. 2006) ...........................................................13

*Pirelli Tyre Co., Ltd., et al. v. United States*,
 638 F. Supp. 3d 136 (Ct. Int'l Trade 2023) ..........................................27

*Seah Steel Vina Corp. v. United States*,
 950 F.3d 833 (Fed. Cir. 2020) ...................................................... 12, 13

*Securities Exchange Comm'n v. Chenery Corp.*,
 332 U.S. 194 (1947) ............................................................................10

*Suramerica de Aleaciones Laminadas, C.A. v. United States*,
 44 F.3d 978 (Fed. Cir. 1994) ...............................................................13

*Timken Co. v. United States,*
  699 F. Supp. 300 (Ct. Int'l Trade 1988) *aff'd,* 894 F.2d 385 (Fed. Cir. 1990)13

*U.S. Steel Group v. United States*,
  162 F. Supp. 2d 676 (Ct. Int'l Trade 2001) ............................................................14

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951) ............................................................13

*Zhejiang Mach. Imp. v. United States,*
  65 F.4th 1308 (Fed. Cir. 2023) ............................................................ 6, 16, 17

**Statutes**

19 U.S.C. § 1516a(b) ............................................................ 12, 13

## SUMMARY OF ARGUMENT

The case is about whether Commerce had a proper legal basis to conclude that Pirelli Tyre – and its decisions about exports to the United States – were somehow controlled by the Government of China.  The Commerce decision rested exclusively on factor three of the *de facto* test –  the conclusion that *Pirelli Italy,* Pirelli Tyre's ultimate parent three corporate levels above Pirelli Tyre), was not sufficiently independent of the Government of China.  This Commerce conclusion did not have a proper legal basis for three reasons.

First, Commerce applied a flawed legal framework.  Notwithstanding an explicit focus on export activities repeated twice in its Policy Bulletin, Commerce reached its conclusion without any effort to find any link to export activities. Moreover, Commerce's determination explicitly stated that Pirelli had failed to rebut the presumption.  Yet, when faced with evidence and arguments more than sufficient to provide the minimum quantum of evidence necessary to rebut a legal presumption, Commerce now pivots and insists its determination was based on substantial evidence.  But we and the Court are left wondering what role the presumption had in Commerce's determination here.  Commerce's determination should not be sustained on such a flawed basis.

Second, Commerce ignored substantial evidence contrary to its conclusion based on the presumption.  Commerce repeatedly took note of the level of

shareholding but never addressed the relevance of majority shareholding being

reduced to minority shareholding and never addressed the other indicia that

showed the lack of any control.  Commerce focused on who appointed directors,

but then largely ignored that they were <u>independent</u> directors, and also ignored the

extensive evidence that Pirelli had provided to Commerce about the individual

members confirming this independence.  Finally, Commerce focused myopically

on a single sentence in Pirelli's annual report and ignored other statements in the

same annual report and the broader context of specific corporate structures put in

place to ensure the independence of Pirelli Italy's decision making.  Under the

substantial evidence standard it is not permissible for Commerce to support a

decision by cherry picking certain facts while ignoring the contrary facts before the

agency.  Commerce's determination of control should not be sustained in the face

of so much unaddressed contrary evidence.

Third, Commerce improperly dismissed the importance of a new corporate

transaction – relisting of Pirelli Italy on the Milan Stock Exchange – that

confirmed and reinforced the independence of Pirelli Italy.  Commerce essentially

concluded that being an "independent director" had no meaning, but drew this

conclusion while ignoring both the plain meaning of the term as well as the

extensive Italian law to the contrary.  Rather than explore this important issue,

Commerce instead looked for reasons to ignore the issue.  As a result Commerce's

decision to dismiss the significance of "independent directors" lacks any supporting foundation in substantial evidence.  Indeed, the Italian law materials discussed during these court proceedings confirm what the factual record before Commerce already showed – that Pirelli Italy was independent of the Government of China and therefore Pirelli Tyre was entitled to separate rate status.

**ARGUMENT**

## I. COMMERCE'S APPROACH TO ANALYZING WHETHER PIRELLI ITALY WAS CONTROLLED BY THE CHINESE GOVERNMENT WAS UNLAWFUL

Pirelli's Opening Brief argued that Commerce's conclusion regarding Pirelli Tyre's[1] eligibility for a separate rate is "otherwise unlawful," even before addressing the record evidence, because the overall framework adopted by Commerce for analyzing whether Pirelli Italy was controlled by the Chinese Government was unlawful.

Our legal arguments have focused on the exact nature and requirements of Commerce's separate rate eligibility test. Commerce's underlying determination stated explicitly that it had followed Commerce's Policy Bulletin 05.1 to undertake its analysis. Therefore, the key legal issues are (a) what Policy Bulletin 05.1 states Commerce must examine in making its determinations, and (b) how the rebuttable presumption that Commerce applies in non-market economy might be rebutted. Pirelli's Opening Brief demonstrated that Commerce's underlying determination did not properly apply the applicable legal criteria set forth in Policy Bulletin 05.1

---

[1] Like the opening brief, we have used the designation "**Pirelli Tyre**" as a short-hand reference for "Pirelli Tyre Co., Ltd.," which was the specific exporter making the separate rate application. "**Pirelli USA**" refers to "Pirelli Tire LLC," the affiliated U.S. importer that undertook the U.S. sales at issue here. "**Pirelli Italy**" refers to Pirelli & C. S.p.A., the Italian parent company of the separate rate applicant. And collectively the parties are referred to as the **Plaintiffs-Appellants** or **Pirelli.**

and adopted an unlawful interpretation and application of "rebuttable

presumption."  Opening Br. 31-37.

The response briefs by Commerce and Petitioner argue that Pirelli seeks to

impose requirements on Commerce and otherwise read new requirements into the

law.  This rebuttal argument, however, reflects a fundamental misunderstanding of

what Pirelli has argued before this Court.  As demonstrated below, Pirelli's legal

arguments are based on the express language and structure of the Policy Bulletin

05.1 and the jurisprudence of this Court regarding rebuttable presumptions.

### A.    Contrary To Claims By Commerce and Petitioner, The Language and Structure of Policy Bulletin 05.1 Requires Each Factor to Be Linked to Export Activities

The language and structure of Policy Bulletin 05.1 focus on how the four

factors of *de facto* government control bear on a respondent's export activities.

The Policy Bulletin first notes generally that the test "focuses on controls over the

decision-making process on <u>export-related</u> investment, pricing, and output

decisions at the individual firm level."  *Policy Bulletin*, p.1(emphasis added).  The

chapeau that precedes the enunciation of the four factors of the *de facto* test then

repeats this same limitation:

> Typically, the Department considers four factors in evaluating whether each respondent is subject to de facto governmental control <u>of its export functions</u>.

*Policy Bulletin* 05.1, p.2 (emphasis added). This is a logical limitation on the scope of the *de facto* test given that the crucial focus of any antidumping proceeding is exports to the United States.

Commerce and the Petitioner would have this Court read that background language and chapeau out of the bulletin and focus only on the text of the four factors. Commerce argues that once the management control factor three is untethered from the requirement of the chapeau, any indication that a state-owned entity can exert influence on management decisions anywhere in the corporate tree of a respondent is somehow sufficient to demonstrate that this prong has been satisfied. USDOJ Br. 20. The government argues specifically that the *expressio unius* cannon supports this reading because two of the four prongs do mention export activities. *Id.* at 21. That argument might be persuasive in the absence of the background discussion and chapeau; but with the explicit requirement to focus on export activities in both the background discussion and chapeau—which Commerce itself drafted—this Commerce argument should be rejected.

Moreover, Commerce's is wrong that this Court has effectively blessed Commerce's approach here. When describing the criteria set forth in factor three of Policy Bulletin 05.1 – the only factor at issue here – Commerce cites *Zhejiang Mach. Imp. v. United States,* 65 F.4th 1308, 1366 (Fed. Cir. 2023). But this decision did not address the legal arguments that Pirelli is making here. There is

no discussion of the structure of Policy Bulletin 05.1 in that case nor any discussion of export activities. Accordingly, there is no basis to infer that the Court was ruling on the legal question that Pirelli presents now.

The requirement that each factor – including factor three – have some connection to export activities is especially important here because of the attenuated connection between the alleged source of government influence and the underlying separate rate applicant. There are numerous aspects of Pirelli's corporate organization – discussed in Sections II and III below – that affirmatively prevented Chinese influences on Pirelli's export pricing decisions.

Commerce claims that no such link is required and that the suggestion that such a link be established is unlawful burden shifting. Pirelli has consistently pointed to a set of facts, well-established in the record, showing (1) that Pirelli USA sets the prices at which the exported products are sold in the United States and (2) that ChemChina has no ability to appoint managers within the Pirelli Group and that such power is solely and exclusively given to CEO Marco Tronchetti Provera pursuant to the Articles of Association of Pirelli Italy.

The dumping law does not charge Commerce to investigate generalized concerns about foreign corporate structures that involve state-owned shareholders. Rather, Commerce is charged with detecting and remedying dumping – export prices about a specific product. By severing the link between factor three –

management independence – and the focus on export activities, Commerce has

impermissibly rewritten *sub silentio* a Policy Bulletin into a much broader grant

than initially envisioned.  When the proper legal framework is applied to the facts

here, Commerce may not permissibly conclude that Pirelli failed factor three of the

separate rate test.

**B.    Commerce Adopted an Unlawful Interpretation and Application of "Rebuttable Presumption"**

Much of the legal argument here has centered around Commerce's

rebuttable presumption of government control.  There is a fundamental disconnect

between legal presumptions as they are typically understood in law and the device

that Commerce is applying.  This distinction is fundamental to gauging the

lawfulness of the determination.

Commerce suggests that Pirelli's arguments reflect an "egregious"

suggestion that Commerce initially analyzed Pirelli Tyre's separate rate eligibility

based on the presumption of government control rather than the typical substantial

evidence standard.  Yet, Commerce's own decision memorandum indicates that

this is exactly what Commerce did.  Specifically, the decision memorandum

concludes that "{o}n this basis, we continue to find that Pirelli Tyre has failed to

rebut the presumption of *de facto* government control." Appx0153.  That statement

confirms Commerce's decision rested on the failure to overcome a presumption

that companies with a state-owned shareholder are themselves controlled by the state.  Commerce explicitly relied on an allegedly un-rebutted presumption to render its decision; the legal question is whether Commerce did so lawfully.

This Court has stated that a "presumption compels the production of this minimum quantum of evidence from the party against whom it operates, nothing more" and that once that evidence has been proffered "a presumption is not merely rebuttable but completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact." *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1037 (Fed. Cir. 1992).  That case was not an antidumping proceeding but we believe is good law about the legal meaning of a "rebuttable presumption" in this circuit.

Applying that definition to Commerce's stated reason here for finding Pirelli to be part of the China-wide entity means that Commerce found "that Pirelli China failed to {produce the "minimum quantum of evidence" demonstrating a lack} of government control."  Appx0153.  As a result, the legal question at issue is precisely the one that the government now seeks to disclaim, namely, whether Pirelli has produced the minimum quantum of evidence required to make the presumption of state-control disappear.  *See* USDOJ Br. 26-27.

Of course, Commerce might conclude after reviewing substantial evidence that Pirelli Tyre was not eligible for a separate rate.  But given the explicit

statement in Commerce's decision memorandum – that it deemed the presumption to be unrebutted – it is not at all clear what Commerce did here. And indeed, the only affirmative statement from Commerce suggests that its decision rested on an unrebutted presumption of control, not substantial evidence that established control.

Again, contrary to the suggestion in Petitioner's Response Brief (at 27) that Commerce rendered a substantial evidence conclusion, Commerce stated in its determination that it was relying on something else; namely, the allegedly unrebutted presumption. When reviewing agency actions, the court "must judge the propriety of such action solely by the grounds invoked by the agency." *Securities Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). Commerce claims that it performed an analysis under the substantial evidence standard. Commerce's actual determination, however, suggests that it was using a different legal standard with a separate and independent meaning.

Pirelli acknowledges that the decision memorandum also discusses many of the issues raised in the substantial evidence sections of Pirelli's opening brief. But in stating and summarizing the basis for its determination, Commerce said nothing about how it addressed all of the evidence other than a statement that Pirelli Tyre

had failed to rebut the presumption.  As a result, this Court must assess

Commerce's determination on that basis.

Neither of the Defendant-Appellees present an argument that a "rebuttable

presumption" does not have independent legal meaning.  Instead, each suggests

that implicit in the way that Commerce applies its special type of rebuttable

presumption is an analysis reflecting the substantial evidence standard because

Commerce discussed the facts.  But this argument overlooks that the analysis of a

"minimum quantum of evidence" would still require an analysis of facts just as a

determination based on a "preponderance of the evidence" or "substantial

evidence" would.  Pirelli's position is that Commerce was not sufficiently clear –

in its determination as written – for this Court to know if Commerce viewed the

evidence in this case correctly through the lens of substantial evidence or not.

Commerce stated it as relying on a presumption that should have disappeared once

Pirelli had provided the minimum quantum of evidence required.  Commerce has a

burden to apply the correct legal standard and to sufficiently explain its decisions.

Commerce has not met that burden here.

Commerce and Petitioner also protest that Pirelli's position imposes an

unlawful burden on the government.  But neither of them has explained

Commerce's policy for finding that the presumption of government control has

been rebutted.  The government assures litigants and the courts that these situations

exist but declines to offer any clarity about the differing and distinct roles of the presumption initially, and then the subsequent inquiry on the merits under the substantial evidence standard. This Court should not accept this unexplained application of Commerce's rebuttable presumption as it currently stands.

## II.  COMMERCE'S DETERMINATION THAT PIRELLI TYRE FAILED TO REBUT THE PRESUMPTION OF GOVERNMENT CONTROL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Given its importance to this case and the discussion among the parties, we start with the applicable standard of review, which is that the court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b). We note three key points about this standard of review.

First, "{s}ubstantial evidence is defined as 'more than a mere scintilla.'" *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting *Consol. Edison Co. of NY v. NLRB,* 305 U.S. 197, 217 (1938). Any conclusion made by Commerce must be supported by "evidence that a reasonable mind might accept as adequate to support a conclusion," *Seah Steel Vina Corp. v. United States,* 950 F.3d 833, 840 (Fed. Cir. 2020), and that "could reasonably lead to the {Agency}'s conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). These jurisprudential

controls reflect that "substantial evidence review exists precisely to ensure that…{the agency} achieves minimal compliance with this obligation, which is the foundation of all honest and legitimate adjudication." *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 378-79 (1998).

Second, though a reviewing Court will defer to the trade agency's "expertise" that deference is limited by the standard of review. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (*citing* 19 U.S.C. § 1516a(b)(1)(B)(i)). Specifically, a reviewing Court must perform its review based on the "record as a whole." *Nippon Steel Corp.* 458 F.3d at 1351 (*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477-78 (1951). "The 'whole record' means that the Court must consider both sides of the record. It is not sufficient to merely examine the evidence that sustains the agency's conclusion." *Timken Co. v. United States,* 699 F. Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed. Cir. 1990) (citing *Universal Camera,* 340 U.S. at 488). The reviewing court, in addition to considering the evidence upon which the agency did rely, must also "take into account 'whatever in the record fairly detracts from its weight.'" *Seah Steel Vina Corp*., 950 F.3d at 847 (*citing Universal Camera,* 340 U.S. at 488 (1951)); *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 44 F.3d 978, 985 (Fed. Cir. 1994); *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Likewise, the court must

scrutinize any inferences drawn from the evidence. The agency "is not free to prescribe what inference from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." *Allentown,* 522 U.S. at 378.

Third, in addition to basing its conclusions on the record as whole, the agency must provide a reasoned explanation of its determination – "a reasoned explanation supported by a stated connection between the facts found and the choice made." *U.S. Steel Group v. United States*, 162 F. Supp. 2d 676, 678 (Ct. Int'l Trade 2001) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)). Fundamentally, an agency's decision is unsupported by substantial evidence where the agency "fail{s} to consider an important aspect of the problem, {or} offer{s} an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Petitioner alleges that Pirelli is asking this Court to reweigh the evidence that Pirelli presented to Commerce because "Pirelli simply disagrees with how Commerce addressed that evidence." Petitioner Br. 22. But such argument is just wrong. The vast majority of Pirelli's substantial evidence arguments do not take issue with how Commerce addressed contrary evidence but rather the fact that Commerce did not address the contrary evidence at all. Commerce did not

address the significance of shareholding dropping from majority control to

minority control.  Commerce did not address the significance of a majority of

directors being "independent directors" or the evidence that Commerce had

collected showing the independence of the Pirelli directors.  Finally, Commerce

did not address the other evidence about corporate structure and behavior that

confirmed independence.  The substantial evidence standard does not allow an

agency to disregard contrary evidence.

### A.    Commerce's Finding that Pirelli's Shareholding Structure Allowed Chinese Owned Companies to Control Pirelli Tyre's Operational Activities Is Not Supported By Substantial Evidence

Commerce reiterates the factual statement that Pirelli Tyre is 36.9% owned

by state-owned entities, USDOJ Br. 29, but does not really address the core issue

of what this minority shareholding means in this case.  Commerce does not explain

how this minority shareholding translates to exercising control over Pirelli Tyre's

management or Pirelli Tyre's export activities.  As demonstrated in Pirelli's

opening brief, it is undisputed that ChemChina and other companies controlled by

the State-owned Assets Supervision and Administration Commission of the State

("SASAC") (together referred as the "Chinese shareholders") did not have

majority ownership of Pirelli Tyre.  Appx0220.  As discussed in the opening brief,

Commerce had placed significant emphasis on the presence of majority

shareholding by state owned entities when making its determination of *de facto*

- 15 -

Chinese government control in POR1. Here, in POR3 Commerce does not explain why the change from majority ownership in POR1 to minority ownership in POR3 had no effect on Commerce's *de facto* control analysis. The reasoning that supports a finding of control for majority ownership simply cannot be extended to minority control without some additional explanation, which Commerce has not provided here.

Petitioner claims that this Court's decision, *Zhejiang Mach. Imp. v. United States*, 65 F.4th 1364 (Fed. Cir. 2023), affirmed Commerce's ability to find that minority state-ownership results in *de facto* control by the Chinese government. On the contrary, this decision, properly understood, actually supports Pirelli's argument about the importance of shareholding structure in determining control.

In *Zhejiang*, the Chinese company Zhejiang Sunny I/E Corporation ("Sunny"), which had direct 100% control of the separate rate applicant, Zhejiang Machinery, was minority owned by SASAC <u>but</u> was majority owned by a labor union. *Id.* at 1368. Commerce found that the labor union is ultimately under the control of the Chinese Communist Party and therefore under government control. *Id.* at 1371. And so, in fact, the shareholding structure in *Zhejiang* reviewed by this Court was one in which the separate rate applicant was actually 100% owned by Chinese Government entities.

That is not the situation here.  Publicly traded on the Milan Stock Exchange, Pirelli Italy, is three rungs separated from Pirelli Tyre, the separate rate applicant. This situation is fundamentally different from *Zhejiang*.  In *Zhejiang*, the company, Sunny, was the direct corporate owner of Zhejiang Machinery.  In addition, in *Zhejiang*, Commerce ultimately determined that 100% of the shareholders of the direct parent company were either directly controlled by SASAC or were controlled by the Chinese Communist Party and therefore the Chinese government. *Zhejiang Mach*., 65 F.4th at 1367, 1371.  This is not the situation for Pirelli.  There is no evidence whatsoever that any of the other Pirelli Italy shareholders are influenced by the Chinese government.

Moreover, we note that in *Zhejiang* this Court listed a number of "additional indicia of control" that might lead to a finding of a minority shareholder exercising *de facto* control, such as "Articles of Association <u>without restrictions on the minority shareholder's rights</u>, or evidence that the minority shareholder stifled other shareholders' opportunity to put competing nominations to the board or indirectly appointed board members."  *Id*. at 1370 (emphasis added).  As discussed in Pirelli's opening brief, such indicia here show independence, not control.  The Articles of Association of Pirelli Italy specifically imposed limitations and restrictions on Chinese shareholders, and, in particular, regarding the power to appoint Pirelli Italy's managers or influence how business and operations are

conducted (including export activities).  Opening Br. 12.  Neither Commerce nor

Petitioner have pointed to any actual evidence that the independent directors on the

board of Pirelli Italy are anything but independent and therefore all are outside

control by the Chinese government.  In short, contrary to Petitioner's claim,

*Zhejiang* actually demonstrates how much more evidence is required to

demonstrate *de facto* control in a minority shareholder situation and that evidence

simply does not exist in this case.

> **B.    Contrary To Commerce's Implicit Finding, The Majority Of
> Members Of Pirelli Italy's Board Of Directors Are Independent
> From The Chinese Shareholders**

Recognizing mere minority shareholding is not enough, Commerce

purportedly considered whether "the record contained additional indicia of control

sufficient demonstrate the company lacks independence."  Appx0150.  The record,

however, does not have such additional indicia of control.  Indeed, the record here

contains substantial evidence of independence that Commerce largely ignores.

Concerning the composition of Pirelli Italy's board of directors,

Commerce's Response Brief simply restates that the majority of the Pirelli Italy's

board of directors were appointed by entities within the Chinese government's

control, Appx0150, and that Mr. Ren Jianxin was Chairman of the board at both

ChemChina and Pirelli Italy.  Appx0150-0151; USDOJ Br. 29.

Once again, Commerce does not put these isolated facts into the broader context of record evidence showing that Chinese Government did not control Pirelli's Italy's board of directors. The record makes clear that <u>8 of the 15</u> board members are <u>"independent directors"</u>. Appx1102-1103; *see also* Appx0920. By definition an "independent director" is someone who is independent and not beholden to a particular shareholder. Additionally, only 4 of the remaining 7 non-independent board members are directors designated by Chinese shareholders. Pirelli 2017 Annual Report, Appx0922.

Faced with this evidence, Commerce simply states that "we are not convinced that those members are free from control from China Chem," Appx0152, but never addresses what Commerce thinks it means to be an <u>independent</u> director. Moreover, Commerce's determination does not offer one shred of evidence, nor any legal support under corporate law, to support this key factual conclusion about control. Commerce claimed it was looking for "additional indicia of control" but then dismissed with no discussion what it means for "control" when the majority of board consists of independent directors. Likewise, neither Commerce nor Petitioner point to any record showing that these independent directors held any position with or had any connection or personal relationship with ChemChina or any other SASAC-controlled entity.

The lack of such evidence is quite telling here, because Commerce had actually investigated that precise issue in the underlying proceeding.  As it does in every case, Commerce here investigated the degree of independence by requiring Pirelli to provide specific information about each individual member of the board of directors of both Pirelli Tyre (the separate rate applicant) and Pirelli Italy.  Accordingly, Commerce's Separate Rate Application, required the following information about each director:  (1) question 4B – any relationships "with any level of the government, (*e.g.*, national, provincial, local) and/or government agencies;" Appx0231, (2) question 11 – a detailed work history, including "the three years prior to working at your company if they have been working at your company for less than three years; Appx0235, (3) question 12 – any work at the government, including "at any level (national, provincial, local), or any government entities, in the past three years;" Appx0236, and (4) question 13 – any need to  "submit any of its candidates for managerial positions within the firm for approval to any government entity at any level (national, provincial, local)." Appx0236.

In the SRA Response Pirelli submitted to Commerce, there was clear evidence that not a single individual independent director of Pirelli Italy's board of directors had any link with the Chinese Government.  These answers thus

confirmed independence and provided no substantial evidence for a contrary conclusion.

Moreover, in response to question 11, Pirelli provided specific information about each individual member of the Board of Directors of Pirelli Tyre, including information on the members of the Board of Directors of Pirelli Italy (as well as its key managers).   This information demonstrated unambiguously that the majority of the Board of Directors at Pirelli Italy had no link with the Chinese government. *See* Appx1407.  Again, this answer confirmed independence and provided no evidence for the contrary conclusion.

So having specifically investigated those facts that might suggest "additional indicia of control," when that evidence provided no such evidence Commerce simply ignored the facts it had collected and found control anyway.  To investigate for indicia of control, to find none, and then to find control anyway does not satisfy the substantial evidence standard. The actual composition of Pirelli Italy's Board of Directors and their work experiences actually rebuts Commerce's conclusion that the Chinese shareholders controlled the board of Pirelli Italy.

**C. Commerce's Conclusion That Chinese State-Owned Shareholders Exercised *De Facto* Operational Control Over Pirelli Italy Ignores Substantial Evidence That Pirelli Italy and therefore Pirelli Tyre's Day-To-Day Management Was Insulated From Chinese Shareholder's Control**

Perhaps the most glaring omissions of both response briefs, and therefore among the most telling, concern all of the contrary evidence identified by Pirelli's opening brief detailing that Pirelli Italy's day-to-day management was insulated from Chinese shareholder's control. Rather, both response briefs simply reiterate the faulty logic that Commerce set forth in its final determination; namely, given that (a) Mr. Marco Tronchetti Provera was in charge of all day-to-day management of Pirelli Italy and (b) Mr. Marco Tronchetti Provera had been appointed by the Board of Directors of Pirelli Italy, Mr. Marco Tronchetti Provera must somehow be beholden to Chinese shareholders.

In this case, such logic fails because it ignores the abundant evidence demonstrating that, in fact, Pirelli Italy's day-to-day management was insulated from Chinese shareholder's control. All the evidence (and supporting documentation) concerning the day-to-day management of Pirelli Italy and Mr. Marco Tronchetti Provera's role as CEO were addressed in considerable detail in the Pirelli's opening brief from pages 52 through 61. Virtually none of this contrary evidence was addressed by either of the response briefs. To summarize both briefs ignore that:

| Evidence (and record citation) | Significance of Evidence |
|---|---|
| Pirelli Tyre Corporation Organization Chart, Appx0558 | Demonstrates the separate rate applicant was multiple levels removed from Pirelli Italy that had Chinese government shareholders |
| *Original* 2015 Shareholder agreement Section 3.8, (granting Mr. Tronchetti Provera exclusive authority over day-to-day management), Appx0619 | Shows Chinese shareholder agreement to grant exclusive authority for day-to-day management to Italian national Mr. Tronchetti Provera |
| 2017 Shareholder agreement Sections 4.4 and 4.7 (granting Mr. Tronchetti Provera exclusive authority over day-to-day management), Appx1103-1104 | New Shareholder Agreement (governing AD review time period) confirmed exclusive authority for day-to-day management in Italian national Mr. Tronchetti Provera |
| 2017 Annual Report statement a p. 205 ""{f}rom the First Trading Day {4 October 2017}, Pirelli is no longer subject to any management and coordination activities by {Chinese shareholders}" Appx0917 | Demonstrates legal and practical significance of re-listing on Milan Stock Exchange and absence of any kind of organizational link between Pirelli Italy and its Chinese shareholders |
| 2017 Annual Report at p. 215 noting that independent directors had satisfied legal requirements of independence under Italian law, Appx0922 | Demonstrates that independent directors were truly independent, thus ensuring full autonomy and independence to Pirelli Italy and its subsidiaries |

In other words, the record evidence demonstrates the extensive steps that had been taken precisely to ensure the independence of Pirelli's day-to-day management.

Instead of addressing this evidence, both Commerce and Petitioner put all their evidentiary weight on a single quote from the annual report (also referenced in the Commerce AD review determination) regarding indirect control by ChemChina via CNRC.[2]  USDOJ Br. 31; Petitioner Br. 7.  Under the substantial evidence standard, however, Commerce cannot myopically focus on one piece of evidence and ignore the broader context and contrary evidence submitted by Pirelli.

Specifically, neither Commerce nor Petitioner even attempt to address the context of Italian law requirements discussed in Pirelli's Opening Brief.  As importantly, neither Commerce nor Petitioner explain why this single sentence should be considered so significant in light of the other contrary evidence submitted by Pirelli—including the very same Annual Report that stated elsewhere that:

> {T}he Board of Directors of Pirelli has determined that, from the First Trading Day {4 October 2017}, Pirelli is no longer subject to any management and coordination activities considered typical, neither by Marco Polo nor by other companies or entities (including CNRC and Chem China).

---

[2]  As noted in Pirelli's Opening Brief, this particular sentence only addressed control under accounting standards for purpose of consolidation, rather than with respect to control over management.  *See* Opening Br. 49.

Appx0917.  The very same Annual Report goes on to list examples of ways in

which ChemChina and CNRC do not have the ability to exercise control over

Pirelli Italy and therefore no control over its subsidiary Pirelli Tyre as well.  *Id*.

In short, the response briefs of Commerce and Petitioner simply echo

Commerce's silence in its determination and thereby ignore the evidentiary record

establishing that, upon the relisting of Pirelli Italy on the Milan stock exchange,

Chinese state-owned shareholders ceased to have management and coordination

activity over Pirelli Italy.  Given this evidence, Commerce's ultimate conclusion as

written does not satisfy the substantial evidence standard.

## III.    THE TRADE COURT CORRECTLY CONSIDERED ITALIAN LAW, WHICH PROPERLY UNDERSTOOD CONFIRMS THAT AFTER PIRELLI'S RELISTING THE CHINESE SHAREHOLDERS DID NOT HAVE *DE FACTO* CONTROL OVER PIRELLI

Upon the relisting of Pirelli Italy (which occurred in October 2017), Chinese

state-owned shareholders ceased to have any management and coordination

authority over Pirelli Italy and, consequently, over the entire Pirelli Group that was

independently managed by the CEO of Pirelli Italy, Mr. Marco Tronchetti Provera.

Opening Br. 54-61.  Moreover, according to Italian law, Pirelli Italy, as a publicly

listed company implemented procedures to prevent the very type of undue influence and potential control that Commerce has inferred.  Opening Br. 62-63.

Commerce and Petitioner respond that the Trade Court was correct *initially* to refuse to examine the Italian law proffered by Pirelli given that the full text of the Italian law provisions were not placed in the administrative record.  USDOJ Br. 32; Petitioners Br. 31.  They also argue that Italian law does not support Pirelli's claim.  Both of these arguments fail.  First, USCIT Rule 44.1 authorized the Trade Court to consider actual Italian law as part of assessing Pirelli's arguments about Italian law.  Second, Italian law states the importance of independent directors, sets forth the criteria for independence, and confirms the necessity not to rely simplistically on a presumption contradicted by the actual facts.

### A.     The Trade Court Permissibly Considered Relevant Italian Law

The argument the Trade Court could not consider the evidence of Italian law ignores the express language of USCIT Rule 44.1 allowing consideration of "all relevant material" concerning a foreign country's law "whether or not submitted by a party."  Thus, it was not necessary for Pirelli Tyre to have submitted the full text of Italian law in the administrative proceedings, just as it is not required for Pirelli Tyre to submit anti-dumping law or other legal materials when they are cited in the administrative proceeding.  All legal materials were readily accessible and could have been consulted by the parties and Commerce.

Moreover, Pirelli had made multiple representations regarding the content and importance of the relevant Italian legal principles in its certified submissions before Commerce, explaining how Italian law confirmed Pirelli's independent decision-making.  Appx0227-0229; Appx1659-1660.

Lastly, we submit that this argument is largely moot given that the Trade Court agreed it had authority to address Italian law and addressed the Italian law provisions.  *Pirelli Tyre Co., Ltd., et al. v. United States*, 638 F. Supp. 3d 1361, 1380-1383 (Ct. Int'l Trade 2023).  Given USCIT Rule 44.1 and the Trade Court decision, these issues are properly before this Court.

### B.    Italian Law Supports Pirelli's Argument That The Chinese Government Did Not Control Pirelli Tyre's Export Activities

Commerce and Petitioner both advance the argument that the Italian law does not rebut Commerce's conclusion that Pirelli Italy is indirectly controlled by Chinese government entities, but do so <u>without referencing a single provision of Italian law</u>.  *See* USDOJ Br. 33-34; Petitioner Br. 32-33.  An argument about Italian law that does not address any specific Italian law provisions is unpersuasive and should fail.

Contrary to this conclusory argument, a review of Italian law provisions plainly rebuts the presumption of *de facto* government control that Commerce reached in this case.  Italian law confirms that Commerce was wrong to conclude

(without any explanation) that "independent directors" had no meaning, and was wrong to conclude superficially that Chinese parties had control.

The Italian law, Article 2497-sexies of Italian Civil Code, provides that companies with consolidated financial statements are presumed to be "subject to management and coordination activities" of the consolidating entity (*i.e.* ChemChina), but also makes clear that this principle is only a rebuttable presumption. Thus, under Italian law, ChemChina's right to consolidate Pirelli Italy's financial statements does not establish management and coordination activities if there is evidence to the contrary.

In this case, there is extensive evidence rebutting that presumption. As shown in Pirelli's opening brief and summarized above in Section II, this contrary evidence includes: *(i)* the shareholders' agreement entered into at the time of the re-listing of Pirelli Italy, and the limitations imposed on the Chinese shareholders contained therein, *(ii)* the Annual Report clarifying that "from the First Trading Day {4 October 2017}, Pirelli is no longer subject to any management and coordination activities considered typical, neither by Marco Polo nor by other companies or entities (including CNRC and Chem China)", and *(iii)* other factual elements showing the absence of any influence over the decisions taken by Pirelli Italy and its managers (*e.g.* the related party transaction procedures required by

Italian law and the appointment of a high number of independent directors to

Pirelli Italy's board of directors).  Opening Br. 49.

Independence under Italian law confirms that independent directors are not

subject to control by shareholders.  The concept of "independence" is well

developed under Italian law meaning that directors do not maintain "directly, or

indirectly, or on behalf of third parties, nor have recently maintained any business

relationships with the issuer or persons linked to the issuer, of such a significance

as to influence their autonomous judgment."  *See* Corporate Governance Code

(version July 2018, Article 3.P.1).  The director's independence is routinely

assessed by the Board of Directors after the appointment, and subsequently on a

yearly basis.  *See* Corporate Governance Code (version July 2018, Article 3.P.2).

Moreover, Italian law requires the results of the Board's assessment to be

communicated to the market.  *Id.*  The Board's assessment is further reviewed by

the board of statutory auditors, which is also independent from shareholders by

law.  In its role, the board of auditors must ascertain the correct application of the

assessment criteria and procedures adopted by the Board of Directors for

evaluating independence of its members.  The result of such controls is notified to

the market in the Corporate Governance Report.  *See* Corporate Governance Code

(version July 2018, Article 3.C.5).  Thus, Italian law confirms that independent

directors have no employment or other connection of an economic or professional

nature with shareholders, and that independence is regularly examined according to legal standards and by an independent body, with the results disclosed to the market.

The Italian Corporate Governance Code further details the criteria for assessing independence.  Specifically, independent members of the board of directors must abide by a number of explicit provisions that effectively prohibit financial dealings with shareholders.  *See* Corporate Governance Code (version July 2018, Article 3.C.1).

In light of the explicit provisions of the Italian Corporate Code, independence cannot be dismissed as a simple "label" as the United States argues, trying to side-step its importance.  USDOJ Br. 34.  On the contrary, that the majority of Pirelli Italy directors are independent demonstrates that they were not subject to any undue influence from the minority government-controlled shareholder, ChemChina.

We also note that in the case of Pirelli Italy, the number of independent directors was eight out of fifteen, that is the majority of the board members. There is absolute no evidence in the record that any of the eight directors did not fulfill their obligation of independence.

Commerce argues that the mere *appointment* of a number of directors by the government-controlled shareholder, would automatically place Pirelli Italy under

the control of the Chinese government. USDOJ Br. 34-35. This assertion is simply wrong in light of the Corporate Governance Code's (described above) and the Legislative Decree No. 58 of 24 February 1998 Consolidated Law on Finance's ("TUF") provisions regarding the role of independent directors, which represent the majority of Pirelli Italy's board of directors.

Specifically, Article 148 TUF establishes the qualification requirements applicable also to independent directors of listed entities. The operations of Pirelli Italy have been extensively documented before Commerce and in this Court, and evidence shows that the independent directors were not compromised in their role proven their compliance with such requirements, including the absence of any link with the minority governmental shareholder.

Additionally, once re-listed on the Italian stock exchange, Pirelli Italy became subject to several increased transparency requirements imposed by Italian law designed to protect the interests of the minority shareholders and the market. Specifically, Article 92 of TUF requires equal treatment to holders of listed financial instruments of the same kind. Consequently, no shareholder (whether governmental or not) enjoys privilege over another shareholder or holders of other securities of that company.

Further, Articles 113-*ter* and 114 of TUF impose specific obligations on listed issuers, such as Pirelli Italy, and grant the oversight authority broad powers

of control over such entities including the power to request information, to verify the transparency of data disclosed to the market, to conduct inspections, and to impose sanctions for failure to honor the obligations imposed (including the obligation to respect independence requirements).  These rules prevent favoring some shareholders over others as well as prevent shareholder interference in a listed company's affairs in contravention of established corporate governance principles.

In sum, Italian law fully support Pirelli's claim that the minority Chinese Government shareholders had no ability to exercise *de facto* control of Pirelli Italy, and, as a result, no ability to exercise *de facto* control over Pirelli Tyre. Commerce's determination to disregard the relisting transaction and the creation of a majority of independent directors flies in the face of both the record evidence before Commerce and these principles of Italian law.

## CONCLUSION AND RECOMMENDED APPELLATE REMEDY

For the reasons set forth above, Pirelli respectfully requests that this Court hold Commerce's determination unlawful and otherwise inconsistent with the record, reverse the Trade Court's decision affirming the determination, and remand the matter to the Trade Court for further proceedings consistent with this Court's decision.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
James C. Beaty
Katherine R. Afzal

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

*Counsel for Pirelli Tyre Co. Ltd., Pirelli Tyre S.p.A, and Pirelli Tire LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2266

**Short Case Caption:** Pirelli Tyre Co., Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,652 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 2/9/2024

Signature: /s/ Daniel L. Porter

Name: Daniel L. Porter